IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

GARY WAYNE HOOKER                                                                                  PLAINTIFF

v.                                              Civil No. 1:16-cv-01078

SHERYL MENDENHALL;
JAMES BOLTON; DOUG WOODS;
OUACHITA COUNTY DETENTION CENTER                                                       DEFENDANTS

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This is a civil rights action filed *pro se* by Plaintiff, Gary Wayne Hooker, under 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. Currently before the Court is Defendants' Motion for Summary Judgment. ECF No. 22. After careful consideration, I make the following Report and Recommendation.

## BACKGROUND

Plaintiff filed his Complaint on September 1, 2016, alleging Defendants were deliberately indifferent to his serious medical condition and subjected him to unconstitutional conditions of confinement at the Ouachita County Detention Center ("OCDC").[1] ECF No. 2. Plaintiff is currently incarcerated in the Arkansas Department of Correction ("ADC") – Wrightsville Unit, in Wrightsville, Arkansas. Plaintiff is suing Defendants Sheryl Mendenhall, Doug Woods, and James Bolton in their individual and official capacities. Plaintiff is seeking compensatory damages and requests "all charges to be dropped". ECF No. 2.

---

[1] Plaintiff originally filed his Complaint in the Eastern District of Arkansas. ECF No. 2. On September 7, 2016, the case was transferred to the Western District of Arkansas, El Dorado Division. ECF No. 6.

1

Defendants Mendenhall, Woods and Bolton filed a summary judgment motion on May 1, 2017, stating they are entitled to judgment as a matter of law because: 1) there is no basis for official capacity liability; 2) Defendants are entitled to the protections of qualified immunity; 3) Defendants were not deliberately indifferent to Plaintiff's serious medical needs; and 4) none of Plaintiff's claims of unconstitutional conditions of confinement exposed him to a substantial risk of serious harm. On May 24, 2017, Plaintiff filed his Response to the motion for summary judgment. ECF No. 26.

Plaintiff was booked into the OCDC on August 26, 2015 and was released to the custody of the ADC on October 26, 2016. ECF No. 26. Plaintiff's Complaint alleges he was given "unacceptable Drinking water" and Defendants "…refuses us clean mops, or Bleach or cleaning supplies, for toilets and showers, refuses to make proper repairs on toilets for 3 months, refusing of clean cool or sanitary Drinking water." ECF No. 2. Plaintiff alleges Defendant Mendenhall "blatently disregarded my need for medical attention, also cursed my mother out on telephone, and cursed and been obseen to me on many occasions" and "during the months of June and July refused me medical attention, stated she had put me on the doctors list in time I had to be taken out in wheelchair, during what I thought was a stroke". ECF No. 2. Plaintiff alleges Defendant Bolton "refused transportation to get medical attention, disregarded need for medical attention…leading to upon my release having toe nails removed…refused me medical attention,…over spider bite & blood pressure…". ECF No. 2. As for Defendant Wood, Plaintiff claims he "…refused me medical transportation, or attention, causing me to loose 4 toenails due to fungus from unsanitary living conditions…lack of medical att. Or transp. For blood pressure or spider bites…" ECF No. 2.

Plaintiff's jail file contains hand written Medical Requests dated 9/1/15, 9/3/15, 9/4/15, 9/8/15, and 11/9/15 in which he makes specific requests for certain medication. ECF Nos. 24-1, 26. Each hand written request contains a notation where Defendant Wood indicated he forwarded the request to Dr. Deluca for action. In 2015 and 2016, Dr. Deluca was the physician who provided medical evaluation and treatment for OCDC detainees. During Plaintiff's incarceration, Dr. Deluca and one of his nurses came to the OCDC one day each week for medical appointments with detainees. ECF No. 24-1. Defendant Wood is a non-medical person who acted as a medical liaison for the OCDC in 2015 and helped coordinate doctor appointments for inmates with Dr. Deluca. ECF Nos. 24, 26. Neither Defendant Wood nor Defendant Bolton are medical care providers. ECF Nos. 24, 26. As a nurse for the OCDC, Defendant Mendenhall responded to Plaintiff's requests for medical treatment, saw and evaluated Plaintiff and created treatment notes. She also assisted Dr. Deluca and his nurse schedule medical appointments with inmates at the OCDC one day per week. ECF Nos. 24-1, 24-2.

Plaintiff received out-patient treatment at the Ouachita County Medical Center from approximately October 19, 2015 through October 26, 2015 for a spider bite and wound care treatment. ECF No. 24-3. Although the dates of treatment are not clear, Plaintiff alleges "my Dr. Leaurja saw me over my toes and feet problems." ECF No. 26. On October 26, 2016, after being released from the OCDC, Plaintiff was transferred to the ADC where he received an initial medical screening and subsequent medical visits. ECF Nos. 24-4, 26. Plaintiff agrees the ADC medical records at the time of his intake do not reveal any medical conditions from which he was suffering. ECF No. 26.

## LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## DISCUSSION

Plaintiff indicates during his incarceration in the OCDC he was awaiting trial on pending criminal charges. ECF No. 2. For purposes of this Motion for Summary Judgment the Court will assume Plaintiff was a pretrial detainee at the time of the alleged violation of his constitutional rights.

1. <u>Official Capacity Claim</u>

Under section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. *Gorman v. Bartch,* 152 F.3d 907, 914 (8th Cir. 1998). With respect to the official capacity claims, they are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, an official capacity claim against Defendants Mendenhall, Wood and Bolton is treated as a claim against Ouachita County. *See Murray v. Lene,* 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Ouachita County's liability under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). To establish the existence of an unconstitutional policy, the plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whiteledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

In *Johnson v. Douglas County Medical Dept.*, 725 F.3d 825 (8th Cir. 2013), the Court outlined the necessary elements for establishing the existence of an unconstitutional custom. To establish a claim for "custom" liability, [Plaintiff] must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and 3) That

> Plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was the moving force behind the constitutional violation.

*Id*., 725 F.3d at 828 (citations omitted).

Plaintiff has only set forth isolated incidents in which he claims the Defendants denied him medical care or subjected him to unconstitutional conditions of confinement. *Id.* The record does not reflect any summary judgment evidence of an unconstitutional policy or custom of Ouachita County that contributed in any way to a violation of Plaintiff's civil rights. Accordingly, Plaintiff's claims against Defendants in their official capacity fail as a matter of law.

2. Denial of Adequate Medical Care

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard. *See Butler v. Fletcher,* 465 F.3d 340, 344 (8th Cir. 2006). To prevail on his Eighth Amendment claim, Plaintiff must prove Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)). In order to show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's

attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

In order for Plaintiff to establish the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

First, Plaintiff acknowledges Defendants Wood and Bolton are not medical care providers. ECF No. 26. Although Defendant Wood did help coordinate doctor appointments for inmates with Dr. Deluca, he and Defendant Bolton relied on the OCDC's medical staff to manage Plaintiff's care. Plaintiff's Complaint does not allege any facts indicating these Defendants were aware of Plaintiff's alleged medical condition, or were responsible for, involved in, or aware of the decisions made regarding Plaintiff's medical care. Plaintiff does nothing more than make bare bone allegations Defendant Wood and Bolton "refused transportation to get medical attention, disregarded need for medical attention…leading to upon my release having toe nails removed…refused me medical attention,…over spider bite & blood pressure…" (ECF No. 2). Plaintiff fails to allege any facts to support a causal link between these Defendants and the alleged inadequate medical care he received. Consequently, Plaintiff's claim against Defendants Wood and Bolton for denial of medical care fail as a matter of law. *See, Keeper v. King,* 130 f.3d 1309, 13114 (8th Cir. 1997 (finding that a prison official cannot be held liable under section 1983 for inadequate medical care when he was not a doctor and had no personal involvement in the decision regarding the prisoner's medical care);

Plaintiff alleges Defendant Mendenhall "blatently disregarded my need for medical attention…. and "during the months of June and July refused me medical attention, stated she had put me on the doctors list in time I had to be taken out in wheelchair, during what I thought was a stroke". ECF No. 2. Based on the summary judgment record, it is clear Defendant Mendenhall did not ignore Plaintiff or refuse to treat a serious medical condition.[2] Defendant Mendenhall responded to Plaintiff's requests for medication and treatment, coordinated his appointments with Dr. Deluca, checked Plaintiff's blood pressure and met with him to discuss ways to improve his blood pressure. ECF No. 24-2, pgs. 32- 44. Plaintiff also received out-patient treatment at the Ouachita County Medical Center from approximately October 19, 2015 through October 26, 2015 for a spider bite and wound care treatment. ECF No. 24-3. As previously stated, mere disagreement with treatment he was provided by Defendant Mendenhall does not rise to the level of a constitutional violation. *Id.* at 499.

Finally, when a claim relates to a delay in treatment, Plaintiff must place verified medical evidence into the record to demonstrate the alleged delay in treatment caused harm and had some detrimental effect. *Beyerbach v. Sears,* 49 F.3d 1324, 1326 (8th Cir. 1995); *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005) (quoting *Crowley v. Hedgepeth,* 109 F.3d 500, 502 (8th Cir. 1997)). On October 26, 2016, after being released from the OCDC, Plaintiff was transferred to the ADC where he received an initial medical screening and subsequent medical visits. ECF Nos. 24-4, 26. Plaintiff agrees the ADC medical records at the time of his intake do not reveal any medical conditions from which he was suffering. ECF No. 26. Plaintiff has not submitted to the Court any verified proof any alleged delay in receiving medical care or medication caused a

---

[2] For purposes of the Motion for Summary Judgment, the Court will assume Plaintiff's medical issues – blood pressure and infected toe nails – are serious medical conditions.

detrimental effect to his overall prognosis. Consequently, Plaintiff's claims against Defendant Mendenhall for denial of medical care fail as a matter of law.

   3. Conditions of Confinement

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998)(citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

As a pretrial detainee, Plaintiff is entitled to "'at least as great' protection as that afforded to convicted prisoners under the Eighth Amendment." *Owens v. Scott Cnty. Jail,* 328 F.3d 1026, 1027 (8th Cir. 2003) (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244, 103 S. Ct. 2979, 77 L.ED.2d 605 (1983). "Under the Fourteenth Amendment, a pretrial detainee's constitutional rights are violated if the detainee's conditions of confinement amount to punishment." *Morris,* 601 F.3d at 809. However, the identical deliberate-indifference standard as that applied to conditions of confinement claims made by convicted inmates is applied in determining whether a pretrial detainee's constitutional rights have been violated. *Butler v. Fletcher,* 465 F.3d 340, 344 (8th Cir. 2006); *Crow v. Montgomery*, 403 F.3d 598 (8th Cir. 2005).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of

9

a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted). Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels,* 382 F.3d at 875.

The law clearly indicates a pretrial detainee cannot be punished. *See Bell v. Wolfish,* 441 U.S. 520, 535 (1979). "However, not every disability imposed during pretrial detention amounts to punishment in the constitutional sense." *Smith v. Copeland,* 87 F.3d 265, 268 (8th Cir. 1996) (internal quotations omitted). *See also Bell,* 441 U.S. at 539. Furthermore, courts are not concerned with *de minimis* levels of imposition on inmates. *Id.*

Plaintiff claims he was subjected to "unsanitary living condition", given "unacceptable Drinking water", and Defendants "refuses us clean mops, or Bleach or cleaning supplies, for toilets and showers, refuses to make proper repairs on toilets for 3 months, and "did nothing about mold in showers, around toilets and in sinks." ECF Nos. 2, 26. However, Plaintiff's allegations must be supported by sufficient probative evidence to permit a finding in his favor on more than mere speculation or conjecture. *Mann v. Yarnell,* 497 F.3d 822, 825 (8th Cir. 2007). In direct contrast to Plaintiff's allegations, Defendants submitted an Affidavit from Defendant Bolton (ECF No. 27) in which he states in 2015 and 2016 all detainees at the OCDC were provided with cleaning supplies on a daily basis to use to clean cells, showers and common areas in the pods. In addition, during the time in question the detainee shower areas were cleaned once per month by the OCDC staff and trustees using a water pressure washing machine. Plaintiff's bare allegations are not "probative evidence" of his claims.

According to Defendant Bolton, in 2015 and 2016 OCDC staff would place five gallon jugs of potable drinking water with ice in the OCDC pods. In the event a detainee did not want to drink water from the five gallon jug due to seeing other inmates dip their cups and hands in the jug to get ice, detainees still had unlimited access to potable drinking water from a faucet. ECF No. 27. Plaintiff's bare allegations do not support a claim of denial of drinking water while he was incarcerated.

In the event a detainee or staff reported a toilet used by inmates was malfunctioning, efforts were made by the OCDC staff to repair the toilet. If those efforts were not successful, OCDC staff would contact a plumber is contacted to perform repairs when it is reasonably practicable to do so. Defendant Bolton states OCDC detainees are "not left without reasonable access to toilets while they are incarcerated at the OCDC". ECF No. 27. Again, Plaintiff's bare allegations, without some summary judgment evidence, do not support a claim for unconstitutional conditions of confinement.

Plaintiff has failed to provide any probative evidence to support his allegations of unsanitary conditions at the OCDC. Moreover, Plaintiff has not shown his living conditions denied him of the minimal measure of life's necessities nor has he demonstrated the issues he complains of posed a substantial risk of serious harm to his health. *See Farmer v. Brennan,* 511 U.S. 825, 834 (1994). Although Plaintiff alleged he lost his toe nails because of a fungus he contracted from conditions in the OCDC, there is no evidence in the record to support such a claim. I find any discomfort Plaintiff may have suffered from the conditions at the OCDC to be *de minimis,* and as a result does not implicate the Constitution. *See Smith,* 87 F.3d at 268. Accordingly, Plaintiff's condition of confinement claims fail as a matter of law.

## CONCLUSION

For the reasons stated, I recommend Defendants Mendenhall, Wood, and Bolton's Motion for Summary Judgment (ECF No. 22) be **GRANTED** and all claims against them be dismissed with prejudice.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 17th day of July 2017.**

        /s/    Barry A. Bryant
        HON. BARRY A. BRYANT
        UNITED STATES MAGISTRATE JUDGE